1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

RICHARD TOBIN MOTT,

     Plaintiff,

    v.

CITY OF McCALL, IDAHO, *et al.*,

     Defendants.

NO.  CV-06-063-S-RHW

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the McCall Defendants' Motion for Summary Judgment (Ct. Rec. 28); the Valley County Defendants' Motion for Summary Judgment (Ct. Rec. 31); Defendant's Motion to Exclude Plaintiff's Expert Witness for Untimely Disclosure (Ct. Rec. 33); the McCall Defendants' Motion for Sanctions for Failure to Comply with Discovery Order (Ct. Rec. 34); and Defendants' Motion to Strike Memorandum in Opposition to Motion (Ct. Rec. 42).

Plaintiff is bringing a § 1983 action for an unreasonable traffic stop; unreasonable and excessive use of force; illegal detention and arrest; unlawful search; denial of right to place bond and to place a phone call; and denial of right to confer with his counsel.  He is also asserting a state law claim of battery and claims based on the Idaho Constitution.

## BACKGROUND

Several important facts in the present case are disputed.  In this case, however, there is a videotape of some of the events as they unfolded on the evening in question.  Recently, the U.S. Supreme Court allowed courts to view the

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 1**

1  facts in the light depicted by the videotape. *See Scott v. Harris*, 2007 WL 1237851
2  *5 (Apr. 30, 2007). The videotape captured the events from the moment the
3  officers contacted Plaintiff in his vehicle until he was arrested and placed in the
4  patrol car. Thus, for purposes of Defendants' summary judgment motion, the
5  Court will view the facts in the light most favor to Plaintiff, except for those facts
6  that are depicted by the videotape. In doing so, all reasonable inferences from the
7  factual record have been drawn in favor of Plaintiff.

8      On February 12, 2004, Plaintiff was driving his vehicle at approximately
9  midnight in the City of McCall, Idaho. It was winter conditions. As Plaintiff came
10 to the intersection of Mill Road and Pine Avenue, he stopped at the stop sign, used
11 his signal to indicate a right turn, and traveled onto Pine Avenue from Mill Road.

12     Defendant David Wright, a former police officer for the City of McCall,
13 Idaho, saw Plaintiff traveling along and it is his contention that Plaintiff failed to
14 use his turn signal and when he stopped, he was partially in the intersection. Based
15 on his observations, he activated his overhead lights and stopped Plaintiff's
16 vehicle. Upon making contact with Plaintiff, who remained inside his vehicle,
17 Defendant Wright smelled alcohol emanating from the vehicle. He noticed that
18 Plaintiff's eyes were glassy, bloodshot, and watery. Plaintiff was mumbling his
19 words, and his movements were slow and deliberate. Upon inquiry, Plaintiff
20 admitted to consuming one beer that evening. Defendant Wright returned to the
21 patrol car and requested backup.

22     Defendant Wright returned to Plaintiff's vehicle, and instructed Plaintiff to
23 exit the vehicle. Plaintiff politely refused. Defendant Wright then asked again.
24 Plaintiff again refused, but opened the door to his vehicle. At this point, Defendant
25 Jerry Summer arrived at the scene. Defendant Summers then ordered Plaintiff to
26 exit the vehicle and Plaintiff again refused. He asked if he was under arrest and
27 Defendant Summers stated that he would be if he refused to exit the vehicle. At
28 this point, Plaintiff placed his hands on the steering wheel. According to Plaintiff,

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 2**

1  he put his hands on the wheel to show the officers that he was not going anywhere.
2  The officers interpreted this act as an act of defiance and they pulled Plaintiff out
3  of the vehicle, threw him on the ground, and handcuffed him.  After he was
4  handcuffed, Plaintiff was searched.  The search uncovered a baggy containing a
5  leafy green substance that was later confirmed to be marijuana. Plaintiff asserts that
6  Defendant Wright planted the marijuana in his pocket.  Plaintiff was placed in the
7  back of the patrol car and transported to the McCall police station.  Plaintiff had
8  some scratches, a cut lip, and complained that his shoulder was hurting, so he was
9  transported to the hospital.  After he was released from the hospital, he was
10 transported to Valley County Jail.  He arrived at the Valley County jail at
11 approximately 2:00 a.m.  Throughout the encounter with the McCall police
12 officers, Plaintiff refused to take a breathalyzer test.

13      Once he arrived at the jail, Plaintiff asked to make a phone call.  He was told
14 that he would have to wait until after he was booked.  He continued to ask to make
15 a phone call throughout the morning.  Plaintiff was not booked until 10:34 a.m.
16 However, he was allowed to make a phone call around 9:00 a.m.  The deputy at the
17 jail testified that he waited to book Plaintiff because Plaintiff was sleeping and
18 appeared intoxicated.  Also, the officer that transported Plaintiff had noted in the
19 log that Plaintiff had "obstructed."  The deputy was the only one on duty, and he
20 did not want to deal with Plaintiff until other staff members could be present.
21 Generally, suspects at the Valley County Jail are not allowed to make phone calls
22 until after they are booked.  Additionally, there were four persons who were
23 booked the morning of February 12, 2004.  These people were booked in the order
24 that they were received at the jail and Plaintiff was the third person who arrived at
25 the jail to be booked that morning.

26      Plaintiff was charged with Driving Under the Influence of Alcohol,
27 Possession of Marijuana, and Resisting and Obstructing a Police Officer.  The
28

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 3**

1   charges were eventually dismissed.[1]

2      Plaintiff filed this lawsuit on February 10, 2006.  He is seeking $5,000,000

3   for deprivation of civil rights, attorneys fees, medical expenses, towing expense,

4   damages for pain and suffering, removal and expungement of records in criminal

5   databases regarding the arrest, and punitive damages.

6                                          **DISCUSSION**

7   **1.   Standard of Review**

8      Summary judgment is appropriate if the "pleadings, depositions, answers to

9   interrogatories, and admissions on file, together with the affidavits, if any, show

10  that there is no genuine issue as to any material fact and that the moving party is

11  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no

12  genuine issue for trial unless there is sufficient evidence favoring the nonmoving

13  party for a jury to return a verdict in that party's favor.  *Anderson v. Liberty Lobby,*

14  *Inc.,* 477 U.S. 242, 250 (1986).  The moving party had the initial burden of

15  showing the absence of a genuine issue of fact for trial.  *Celotex Corp. v. Catrett*,

16  477 U.S. 317, 325 (1986).  If the moving party meets it initial burden, the non-

17  moving party must go beyond the pleadings and "set forth specific facts showing

18  that there is a genuine issue for trial.  *Id.* at 325; *Anderson*, 477 U.S. at 248.

19     In addition to showing that there are no questions of material fact, the

20  moving party must also show that it is entitled to judgment as a matter of law.

21  *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir.

22  2000).  The moving party is entitled to judgment as a matter of law when the non-

23  moving party fails to make a sufficient showing on an essential element of a claim

24  on which the nonmoving party has the burden of proof.  *Celotex*, 477 U.S. at 323.

25     When considering a motion for summary judgment, a court may neither

26  _____

27     [1]Defendant Wright left his employment with the City of McCall in March

28  2004, and moved to Carlsbad, New Mexico.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 4**

weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

In this case, Plaintiff failed to provide the Court a statement of facts which are in dispute, as required by LR 7.1(c)(2).

**2.    McCall Defendants' Motion for Summary Judgment**

In their summary judgment motions, the McCall Defendants assert that the officers who are being sued in their individual capacity are entitled to qualified immunity, and Plaintiff has failed to establish *Monell* liability against the City of McCall, and Defendant Ralph Appa, who is being sued in his official capacity.

**A.    Failure to Serve**

Defendant Wright and Defendant Appa assert that they have not been served with the summons and complaint. Plaintiff has not responded to Defendants' arguments, nor has he requested additional time with which to serve these Defendants.

Fed. R. Civ. P. 4(m) requires a district court to grant an extension of time when the plaintiff shows good cause for the delay. *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007). Additionally, the rule permits the district court to grant an extension even in the absence of good cause. *Id.* District courts have broad discretion to extend time for service under Rule 4(m). *Id.* Factors courts should consider in making extension decisions include whether there is a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service. *Id.*

Because Plaintiff has failed to respond, and turn, failed to request an extension of time, the Court grants the McCall Defendants' motion to dismiss the claims asserted against Defendant Wright and Defendant Appa for failure to serve these Defendants.

///

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 5**

**B.   Personal Participation**

Plaintiff is suing Defendant Ralph Appa in both his individual and official capacity.  Plaintiff has not alleged any personal participation on the part of Defendant Ralph Appa.  Liability under section 1983 arises only upon a showing of personal participation by the defendant in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff has not refuted Defendant Appa's assertion that he did not personally participate in any of the alleged constitutional violations.  Summary judgment with regard to any claims for individual liability against Defendant Appa is appropriate.

**C.   Individual Liability**

Section 1983 creates a cause of action against any person who, acting under color of state law, violates the constitutional rights of another person.  42 U.S.C. § 1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101, 1106 (9th Cir. 2001).  To succeed on a section 1983 claim, Plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him or her of a constitutional right.  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  A public official may be immune from liability for acts performed in his official capacity under either the doctrine of absolute immunity or qualified immunity.  *Mabe*, 237 F.3d at 1106.

In determining whether Defendant is entitled to qualified immunity, the Court must first determine whether Plaintiff has stated a *prima facie* claim that Defendants violated one of his constitutional rights.  *Saucier v. Katz*, 533 U.S. 194, 198 (2001); *Brittain v. Hansen*, 451 F.3d 982, 988 (9th Cir. 2006).  Stated another way, courts are required to resolve the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Scott*, 2007 WL 1237851 *3.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 6**

at 201.

If the Court determines that Plaintiff presented a *prima facie* case, it must then ascertain "whether that right was 'clearly established' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brittain*, 451 F.3d at 988 (*quoting Menotti v. City of Seattle*, 409 F.3d 1113, 1152 (9th Cir. 2005). "This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case."  *Id.* (*quoting San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005).

Here, Plaintiff has failed to meet his burden of showing that any of the remaining McCall Defendants violated his constitutional rights.

### (1)    Legality of the Initial Traffic Stop

If Plaintiff was pulled over without Defendant Wright observing any traffic violations, Defendant Wright's conduct violated Plaintiff's Fourth Amendment rights and such conduct would support a section 1983 claim.  *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 946 (9th Cir. 2003).  In viewing the facts in the light most favorable to Plaintiff, that is, that he did not violate any traffic laws, he has alleged a constitutional violation that would survive summary judgment.

Because Plaintiff has failed to serve Defendant Wright, however, his claim fails, because Defendant Wright was the only Defendant that personally participated in the decision to initiate a traffic stop.

### (2)    Legality of the Arrest

To prevail on his claim for unlawful arrest under section 1983, Plaintiff must show that Defendants Wright and Summers made the arrest without probable cause.  *Dubner v. City & County of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001). Probable cause exists when, taking together the totality of circumstances known to the arresting officer, a prudent person would conclude that there was a fair probability that the arrested person committed a crime.  *Gasho v. United States*, 39

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 7**

1    F.3d 1420, 1428 (9th Cir.1994).  If Defendant had probable cause, Plaintiff's arrest

2    was lawful regardless of the officer's subjective motivation.  *Tatum v. City &*

3    *County of S.F.*, 441 F.3d 1090, 1094 (9th Cir. 2006).

4           Here, Officer Wright stated that when he approached the vehicle, he could

5    smell alcohol, Plaintiff's eyes were glassy and bloodshot, he was slurring his

6    words, and his movements were slow.  Plaintiff does not dispute these facts.  These

7    facts support a finding that there was a fair probability that Plaintiff had been

8    driving while intoxicated.

9           Moreover, under Idaho law, once the officers had reasonable suspicion that

10   Plaintiff was driving while intoxicated, Idaho law permits officers to order him out

11   of his vehicle.  *State v. Irwin*, 137 P.3d 1024 (Id. App. 2006) (holding that once

12   officers possessed reasonable suspicion to detain the driver for traffic violations,

13   they were also entitled to order the driver to get out of her vehicle); *State v. Nelson*,

14   8 P.3d 670 (Id. App. 2000)(holding there was articulable suspicion where there

15   was an odor of alcohol coming from the vehicle and the driver admitted he had

16   three or four drinks; officer was justified in requiring the driver to exit his vehicle

17   and perform field sobriety tests); *State v. Ferreira*, 988 P.2d 700 (Id. App. 1999)

18   (articulable suspicion existed where an odor of alcohol was coming from vehicle

19   plus driver's admission that he had had two glasses of wine and a glass of cognac;

20   administration of field sobriety test was constitutional).

21          Similarly, under federal law, officers may exercise their discretion to require

22   a driver who commits a traffic violation to exit the vehicle even though they lack

23   any particularized reason for believing the occupants posed a threat to his safety.

24   *Pennsylvania v. Mimms*, 434 U.S. 106, 108-111(1977) (per curiam).  The *Mimms*

25   Court balanced the driver's personal liberty interest against the serious risk faced

26   by police officers when they approach a person seated in an automobile, even in

27   routine traffic stops, and determined that after a lawful traffic stop, the additional

28   intrusion of ordering a driver out of a vehicle can only be described as *de minimis*.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 8**

1   *Id.*

2        Because the officers were justified in asking Plaintiff to step out of the car,

3 his refusal to follow their orders was a violation of Idaho Code § 18-705, which is

4 the statute that makes resisting and obstructing a law enforcement officer a crime;

5 thereby providing a second basis for probable cause to arrest Plaintiff.

6        Viewing the facts in the light most favorable to Plaintiff, no reasonable jury

7 could find that Defendants Wright and Summers did not have probable cause to

8 arrest Plaintiff for driving while intoxicated, and resisting and obstructing police

9 officers.  Because no constitutional violation occurred, it is not necessary to

10 determine whether the law regarding warrantless arrests was clearly established.

11                **(3)**     **Reasonableness of the Search**

12        Under the search incident to arrest exception to the Fourth Amendment

13 warrant requirement, officers may search an individual after a lawful custodial

14 arrest.  *United States v. Robinson*, 414 U.S. 218, 226 (1973); *Menotti v. City of*

15 *Seattle*, 409 F.3d 1113, 1153 (9th Cir. 2005).  Because the Court found that the

16 arrest of Plaintiff was lawful, the officers were entitled to search Plaintiff as a

17 search incident to arrest, and no constitutional violation occurred.

18                **(4)**     **Reasonableness of the Use of Force**

19        "The use of force is contrary to the Fourth Amendment if it is excessive

20 under objective standards of reasonableness."  *Saucier*, 533 U.S. at 201-02.  In

21 determining the need for force, the court must pay "careful attention to the facts

22 and circumstances of [the] particular case, including the severity of the crime at

23 issue, whether the suspect poses an immediate threat to the safety of the officers or

24 others, and whether [the suspect] is actively resisting arrest or attempting to evade

25 arrest by flight."  *Graham v. Conner,* 490 U.S. 386, 396 (1989).

26        The reasonableness of Defendants Wright's and Summers's use of force is

27 viewed from the facts as they are depicted on the videotape.  The videotape shows

28 the officers grabbing Plaintiff, pushing him down on an ice-covered street, and

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 9**

twisting his arms in order to place handcuffs on his wrist.  The video also shows Plaintiff activity resisting having his arms put behind his back.  Viewing the facts as depicted on the videotape, no reasonable jury could find that the Defendants' use of force was unreasonable.  Because no constitutional violation occurred, it is not necessary to determine whether the law regarding reasonableness of the use of force was clearly established.

### (5)  State law claims

Because the officers had probable cause to arrest and search Plaintiff, and the use of force was reasonable, the officers actions were lawful, and Plaintiff's state law claim for battery fails as a matter of law.  *White v. University of Idaho*, 797 P.2d 108 (Id. 1990) (civil battery consists of an intentional, unpermitted contact upon the person of another which is either unlawful, harmful or offensive).

The Court adopts the reasoning of Magistrate Mikel H. Williams and finds that there is no private cause of action for an Idaho constitutional law violation.

### D.   Municipal Liability

Plaintiff is alleging claims against the City of McCall and Defendant Ralph Appa, in his official capacity.[2]

A municipality may be held liable under § 1983 only for constitutional violations occurring pursuant to an official government policy or custom.  *Monell*

---

[2]A supervising officer can be held liable in his individual capacity "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal quotation marks, citations and alterations omitted).  Plaintiff specifically stated that he was only asserting claims against Defendant Appa in his official capacity, so it is not necessary for the Court to determine whether Defendant Appa can be individually liable as a supervising officer.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 10**

1   *v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978).  Existence of municipal policy

2   or custom may be established, for purpose of imposing § 1983 liability on a city,

3   by showing: (1) longstanding practice or custom which constitutes standard

4   operating procedure; (2) that decision-making official was, as matter of state law,

5   the final policymaking authority whose edicts or acts may fairly be said to

6   represent official policy in area of decision; or (3) that official with final

7   policymaking authority either delegated that authority to, or ratified the decision

8   of, a subordinate.  *Ulrich v. City and County of S.F.*, 308 F.3d 968, 984-85 (9th Cir.

9   2002) (internal quotation marks and citations omitted).  A municipal policy "may

10   be inferred from widespread practices or evidence of repeated constitutional

11   violations for which the errant municipal officers were not discharged or

12   reprimanded." *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir.

13   2001) (internal quotation marks and citation omitted).

14         In support of their motion, Defendants submitted the policies of the McCall

15   police department, which provide, in part, that probable cause is required to make

16   an arrest.  Plaintiff has not refuted this evidence.  Plaintiff has failed to show that

17   any alleged violation was the result of a government policy or custom and,

18   therefore, has not met his burden under *Celotex* of making a sufficient showing on

19   his *Monell* liability claim.

20   **3.   Valley County Defendants**

21         Plaintiff asserts that the Valley County Defendants violated his right to

22   counsel and his right to bail, and also asserts a claim for making false entries into

23   the computer criminal database.

24         **A.   Right to Counsel**

25         The right to counsel does not attach until "at or after the initiation of

26   adversay judicial criminal proceedings–whether by way of formal charge,

27   preliminary hearing, indictment, information, or arraignment. *Strandberg v. City*

28   *of Helena*, 791 F.2d 744, 747(9th Cir. 1986) (*citing Kirby v. Illinois*, 406 U.S. 682,

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 11**

1   689 (1972)).  Because the police were in the process of booking Plaintiff, no
2   critical state of prosecution was implicated; therefore, Plaintiff did not have a Sixth
3   Amendment right to place a phone call to his attorney prior to his booking. *See id.*
4   As such, Plaintiff's section 1983 claim for violation of his Sixth Amendment right
5   to counsel fails as a matter of law.

6   **B.   Right to Establish Bail**

7   A pretrial detainee has a Fourteenth Amendment right to have a state bail
8   system administered without caprice or discrimination, but he has no absolute right
9   to bail.  *Kelly v. Springett*, 527 F.2d 1090, 1093 (9th Cir. 1975).  Plaintiff has not
10   asserted that the bail system was administered arbitrarily, capriciously, or in a
11   discriminatory manner.  Accordingly, his section 1983 claim for violation of his
12   right to establish bail fails as a matter of law.

13   **C.   False Information**

14   Defendants presented evidence that Valley County officials do not enter
15   information into any criminal databases; rather such information is input by
16   employees of the State of Idaho.  Plaintiff has not refuted this evidence and has not
17   met his burden under *Celetox*.

18   **4.   Conclusion**

19   Plaintiff has not made a sufficient factual showing that there are questions of
20   material fact that must be resolved by the jury, and has not refuted Defendants'
21   showing that they are entitled to summary judgment as a matter of law.

22   Accordingly, **IT IS HEREBY ORDERED:**

23   1.   McCall Defendants' Motion for Summary Judgment (Ct. Rec. 28) is
24   **GRANTED**.

25   2.   Valley County Defendants' Motion for Summary Judgment (Ct. Rec.
26   31) is **GRANTED**.

27   3.    Defendant's Motion to Exclude Plaintiff's Expert Witness for
28   Untimely Disclosure (Ct. Rec. 33) is **DENIED**, as moot.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT** ~ 12

1    4.    Defendant's Motion for Sanctions for Failure to Comply with
2    Discovery Order (Ct. Rec. 34) is **DENIED**.

3    5.    Defendant's Motion to Strike Memorandum in Opposition to Motion
4    (Ct. Rec. 42) is **DENIED**, as moot.

5    6.    The District Court Executive is directed to enter judgment in favor of
6    the McCall Defendants and the Valley County Defendants and against Plaintiff.

7    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this
8    Order, forward copies to counsel, and close the file.

9    **DATED** this 14th day of May, 2007.

*s/ Robert H. Whaley*

ROBERT H. WHALEY
United States District Judge

Q:\Idaho Cases\Mott v. City of McCall\sj.wod.wpd

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT** ~ 13